IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  12-cv-00564-CMA-MEH

JOHN RAINEY,

      Plaintiff,

v.

KATHLEEN BOYD,

      Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge.**

Before the Court is Defendant's Motion to Dismiss [filed May 10, 2012; docket #27].  The

motion is referred to this Court for recommendation.  (Docket #29.)  Because the Plaintiff filed

documents outside of the pleading in support of his response, the Court converted the motion to a

Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56.  (Docket #39).  The matter is now

fully briefed and oral argument would not materially assist the Court in its adjudication of the

motion.  For the following reasons and based on the entire record herein, the Court recommends that

Defendant's motion be **granted**.[1]

---

[1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file
any written objections in order to obtain reconsideration by the District Judge to whom this case is
assigned.  FED. R. CIV. P. 72.  The party filing objections must specifically identify those findings
or recommendations to which the objections are being made.  The District Court need not consider
frivolous, conclusive or general objections.  A party's failure to file such written objections to
proposed findings and recommendations contained in this report may bar the party from a de novo
determination by the District Judge of the proposed findings and recommendations.  *United States
v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file
written objections to the proposed findings and recommendations within fourteen (14) days after
being served with a copy may bar the aggrieved party from appealing the factual findings of the

# BACKGROUND

## I.      Procedural History

Plaintiff, John Rainey, initiated this lawsuit *pro se* on March 2, 2012.   (Docket #1.) Although Plaintiff was initially incarcerated at Centennial Correctional Facility ("CCF"), he is now housed at the Colorado State Penitentiary where he remains in the custody of the Colorado Department of Corrections ("CDOC").   (Docket #15.)

Plaintiff's complaint stems from one claim asserting four constitutional violations of the Eighth, Fourteenth and Seventeenth Amendments.[2]   More specifically, Plaintiff alleges that Defendant violated the Eighth and Fourteenth Amendments by denying Plaintiff adequate medical treatment.   (Complaint, docket #2 at 6, 8.)   With respect to the Fourteenth Amendment, Plaintiff argues that Defendant deprived him of his right to life under the Due Process Clause by denying him a low cholesterol diet and exposing him to pepper spray, and deprived him of equal protection when he was denied medications before going to court.   (*Id.* at 8.)   Plaintiff further alleges that Defendant violated the Seventeenth Amendment.   (*Id.* at 6.)   As relief, Plaintiff seeks actual damages in the amount of $10,000,000, and punitive damages in the amount of $10,000,000.   (*Id.* at 11.)

Before the deadline for response to the Complaint, Plaintiff moved for admission of an additional grievance (#C-CF 11/12-8485) as part of his original Complaint.   (Docket #21.)   In the same manner, Plaintiff requested leave to submit certain additional documents as exhibits.   (Docket

_____

Magistrate Judge that are accepted or adopted by the District Court.   *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

[2]The Plaintiff also identifies the Fifth Amendment as having been violated by Defendant; however, the Plaintiff is a state prisoner and any due process or equal protection challenges to the conditions of his confinement must be brought pursuant to the Fourteenth Amendment.

#22.)  On May 1, 2012, the Court denied as premature the Plaintiff's motions.  (Docket #26.)

On May 10, 2012, Defendant Kathleen Boyd filed the present motion to dismiss the complaint.  Defendant argues that: (1) Plaintiff failed to exhaust his available administrative remedies; (2) Plaintiff fails to allege Defendant's personal participation as required under § 1983; (3) Plaintiff fails to state a cognizable Eighth Amendment claim; (4) Plaintiff fails to state cognizable Fourteenth and Seventeenth Amendment claims; and (5) Defendant is entitled to qualified immunity.

Plaintiff filed a timely response asserting that he was prevented from exhausting his administrative remedies by his case manager who "refus[ed] to let [Plaintiff] sign for the next step" and "made sure there was more than 30 days between each step before letting [him] sign for the next step."  (Response, docket #33 at 3.)  Plaintiff also contends that he reported all medical issues to his "care provider," Defendant Boyd, who ignored the reports and "fail[ed] to protect [him]."  (*Id.* at 3-4.)  Further, Plaintiff asserts that the ailments he suffered – pain, rapid heart beat, dizziness, swelling, and fainting – are "sufficiently serious" to meet the objective component of an Eighth Amendment claim, and he alleges Defendant Boyd knew about these ailments but failed to treat them.  (*Id.* at 4.)  Plaintiff asks the Court to allow him to file an amended complaint.  (*Id.*)

In reply,[3] Defendant concedes that Plaintiff has demonstrated he exhausted his claim concerning the "floating" of his medication.  (Reply, docket #34 at 1-2.)  However, Defendant contends that Plaintiff fails to demonstrate her participation in such "floating."  Further, Defendant argues that Plaintiff fails to demonstrate her participation in his claims alleging denial of

_____

[3]On June 11, 2012, Plaintiff filed a "surreply" to Defendant's motion to dismiss (Docket #36); however, Plaintiff failed to file a motion seeking the Court's permission to file the surreply pursuant to FED. R. CIV. P. 7(b).  Thus, the Court will not consider Plaintiff's surreply.

medications, his allergic reaction to Lopressor and being forced to continue it, the administration

of medication by corrections officers, and the denial of medication after fainting and presenting with

heart attack symptoms.   Defendant also asserts that Plaintiff fails to demonstrate how his case

manager prevented him from properly filing grievances.

Because the Plaintiff submitted evidence outside of his Complaint in support of his position

that he exhausted his administrative remedies, the Court converted Defendant's motion to a motion

for summary judgment on this issue.   The Court permitted additional briefing and informed the

parties that it would consider the documents Plaintiff sought to "admit" earlier in the litigation.

Only the Plaintiff filed a subsequent brief.   In it, Plaintiff repeats his allegations that he reported to

Defendant that he suffered the ailments described above after starting a new medication, but the

medication was not changed for ninety (90) days.   Plaintiff also repeats that he was admitted to a

hospital after Defendant refused to treat him for a reaction to medication administered by corrections

officials.   Plaintiff also asserts that each claim he makes in the Complaint has been exhausted.

The only issue for which the Court considers evidence outside of the pleadings is the

Defendant's challenge concerning Plaintiff's exhaustion of administrative remedies.   Therefore, the

Court will begin its analysis pursuant to Fed. R. Civ. P. 56 of the exhaustion issue.   If the Court finds

summary judgment improper on any of the Plaintiff's claims, the Court will proceed to analyze

Defendant's remaining challenges pursuant to Fed. R. Civ. P. 12(b)(6).

## II.     Statement of Facts

The following are factual allegations (as opposed to legal conclusions, bare assertions or

merely conclusory allegations) made by the Plaintiff (or construed liberally) in the Complaint, which

are taken as true for analysis under Rule 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009). The Court must limit its review to the four corners of the Complaint, but may also consider documents attached to the pleading as exhibits, *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001), as well as any unattached documents which are referred to in the Complaint and central to the plaintiff's claim, so long as the authenticity of such documents is undisputed. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

Plaintiff's Complaint arises from Defendant Boyd's alleged denial of medical treatment. (Docket #2 at 3.) Plaintiff alleges that he suffers from high blood pressure and high cholesterol, along with hepatitis C, artery disease, and chest pains. (*Id.*) In August and September 2011, Plaintiff was denied the ability to take his medications for his high blood pressure and cholesterol prior to being taken to his court appearances and while Plaintiff was meeting with a psychiatrist in the attorney visiting room at CCF. (*Id.* at 6.) On September 25, 2011, Plaintiff submitted a "kite" to see Defendant Boyd for medical treatment. (*Id.*) Plaintiff was seen by Defendant Boyd on October 7, 2011, when he reported that he was not receiving any of his medication and suffered swelling in his feet. (*Id.* at 7.) Defendant Boyd refused to give Plaintiff further medication because he was already taking too much. (*Id.*) Instead, Defendant Boyd gave Plaintiff a stocking and was told to sleep with his feet elevated above his heart. (*Id.*)

On October 4, 2011, Plaintiff requested a low cholesterol diet which Defendant Boyd allegedly failed to approve. (*Id.*) On November 3, 2011, Plaintiff asked Defendant Boyd to be placed on a list to be taken out of the pod where pepper spray is used because of his health conditions. (*Id.*) Plaintiff has experienced two pepper spray incidents, which caused him dizziness, vomiting, difficulty breathing and heart flutters. (*Id.*)

Plaintiff fainted and was taken to medical on December 18, 2011, whereby he was told by

medical staff that he was "faking" his illness and given no medical treatment. (*Id.* at 8.) On January 10, 2012, two correctional officers administered medication to Plaintiff without a registered nurse present. (*Id.* at 7.) The medication caused Plaintiff illness and chest pains. (*Id.*) As a result, Plaintiff was hospitalized and the doctor prescribed a new medication, Norvasc. (*Id.* at 7-8.) The new medication caused Plaintiff's face, lips, and mouth to swell up due to an allergic reaction. (*Id.* at 8.) Plaintiff thereby filed multiple requests to medical and Defendant Boyd in order to terminate the medication; however, Plaintiff was "forced to take it for 30 days before it was stopped." (*Id.*) On January 27, 2012, Plaintiff was prescribed Lopressor, causing similar allergic reactions. (*Id.*) Plaintiff reported this to the nurse station, but was forced to take the medication for two days because it was floated with his other medications. (*Id.*)

Plaintiff "declared emergencies" on February 17 and 18, 2012, due to hives, high blood pressure, and swollen lips, mouth, face, and tongue. (*Id.* at 9.) Defendant Boyd saw Plaintiff and did not know what was causing the symptoms, thereby sending him "back to the cell with no treatment." (*Id.*)

## III.   Finding of Facts (Rule 56)

The Court makes the following findings of fact concerning the exhaustion issue viewed in the light most favorable to the Plaintiff, who is the non-moving party in this matter.

1.   On September 2, 2011, the Plaintiff filed a Step One grievance concerning denial of his medication three times that he was taken to court for appearances. (Docket #2 at 21.) The grievance proceeded through Step Two (*id.* at 22), and terminated with review of Plaintiff's Step Three grievance on November 29, 2011 (*id.* at 23, 20).

2.   On September 21, 2011, the Plaintiff filed a Step One grievance concerning denial of his

medication during regular dispersal on September 21, 2011 from 10:00 a.m. to 10:30 a.m., while he met with a psychiatrist in the attorney visiting room until 11:15 a.m. (Docket #2 at 13.) The grievance proceeded through Step Two in which the Plaintiff complained further that he had not received his medication on certain dates in September and October 2011 (*id.* at 14), and terminated with review of Plaintiff's Step Three grievance on January 9, 2012 (*id.* at 15, 12).

3.      On October 5, 2011, the Plaintiff filed a Step One grievance concerning denial of his request for a low cholesterol diet. (Docket #2 at 17.) The grievance proceeded through Step Two (*id.* at 18), and terminated with review of Plaintiff's Step Three grievance on January 19, 2012 (*id.* at 19, 16).

4.      On November 3, 2011, the Plaintiff filed a Step One grievance concerning denial of his request to be removed from an area where pepper spray is used. (Docket #21 at 3.) The grievance proceeded through Step Two (*id.* at 4), and terminated with review of Plaintiff's Step Three grievance on February 14, 2012 (*id.* at 5, 2).

5.      On November 24, 2011, the Plaintiff filed a Step One grievance concerning non-renewal of his "mechanical soft diet." (Docket #22 at 8.) The grievance proceeded through Step Two (*id.* at 9), and terminated with review of Plaintiff's Step Three grievance on March 8, 2012 in which the officer determined that Plaintiff had not exhausted his administrative remedies because he failed to identify the remedy he sought (*id.* at 10, 7).

6.      On December 14, 2011, the Plaintiff filed a Step One grievance concerning "floating" and administration of his medication by correctional officers. (Docket #33 at 11.) The grievance proceeded through Step Two (*id.* at 12), and terminated with review of Plaintiff's Step Three

grievance on March 8, 2012 (*id.* at 13, 10).

7.      On December 29, 2011, the Plaintiff filed a Step One grievance concerning the alleged

actions of his case manager in preventing Plaintiff from filing grievances.  (Docket #33 at

7.)  The grievance proceeded through Step Two (*id.* at 8), and terminated with review of

Plaintiff's Step Three grievance on March 22, 2012 in which the officer determined that

Plaintiff had not exhausted his administrative remedies because he failed to follow procedure

(*id.* at 9, 6).

8.      On January 25, 2012, the Plaintiff filed a Step One grievance concerning denial of treatment

for allergies to a medication administered from December 27, 2011 through January 24,

2012.  (Docket #22 at 4.)  The grievance presumably proceeded through Step Two,[4] and

terminated with review of Plaintiff's Step Three grievance on April 16, 2012 (*id.* at 6, 3).

## LEGAL STANDARDS

### I.      Treatment of a *Pro Se* Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less

stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not

supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory

on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations

and citations omitted).  The Tenth Circuit interpreted this rule to mean, "if the court can reasonably

read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite

the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor

---

[4]The document submitted by the Plaintiff reflects Step Two of a different grievance
concerning missing laundry.  (*See* docket #22 at 5.)

syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant."  *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## II.    Dismissal under Fed. R. Civ. P. 56

Summary judgment serves the purpose of testing whether a trial is required.  *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003).   The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  The moving party bears the initial responsibility of providing to the Court the factual basis for its motion and identifying the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which reveal that there are no genuine issues as to any material facts, and that the party is entitled to summary judgment as a matter of law.  *Id.* at 323; *see also Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002) ("[s]ummary judgment is not proper merely because [plaintiff] failed to file a response").

If the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. *Hysten v. Burlington Northern and Santa Fe Ry.*, 296 F.3d 1177,

1180 (10th Cir. 2002); Fed. R. Civ. P. 56(e). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1256 (10th Cir. 2005).

## III.   Dismissal under Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The Rule 12(b)(6) evaluation requires two prongs of analysis. First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id*. at 678-79. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 679. If the allegations state a plausible claim for relief, such claim survives the motion to

dismiss. *Id*. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678.

The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id*. (quotation marks and citation omitted).

## ANALYSIS

The Court will begin by determining, pursuant to Rule 56, whether Plaintiff has exhausted his available administrative remedies in this matter. If the Court finds summary judgment is improper concerning exhaustion of any of his claims, the Court will proceed to address, pursuant to Rule 12(b)(6), whether Defendant is entitled to qualified immunity from liability for the Plaintiff's Eighth, Fourteenth and Seventeenth Amendment Claims.

## I.     Exhaustion of Administrative Remedies

Defendant argues that Plaintiff has failed to exhaust his available administrative remedies for some of the claims asserted in his Complaint. The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust any available administrative remedies before challenging prison conditions in federal court. Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) (1996). At one

time, exhaustion was left to the discretion of the district court; however, it has since become mandatory. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). "Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards." *Id.* "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones v. Bock*, 549 U.S. 199, 204 (2007). The purpose of proper exhaustion is to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record. *Id.* (quoting *Woodford*, 548 U.S. at 94-95). When a prisoner properly exhausts administrative remedies for some claims, but not for others, the court should not dismiss the entire case; rather, it may dismiss those claims that have not been properly exhausted, while proceeding with the properly exhausted claims. *Jones*, 549 U.S. at 223-24.

The Supreme Court has held that failure to exhaust all administrative remedies is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints. *Id.* at 216. All that is required of plaintiffs to properly exhaust administrative remedies is compliance with prison grievance procedures. *Id.* at 218.

The CDOC maintains a written grievance procedure that includes three levels of appeal for its inmates. A.R. 850-04.[5] After the three levels of appeal have been properly exhausted, the grievance officer is responsible for notifying the "offender" that he or she has exhausted his or her administrative remedies. *Id.* (IV)(G)(1)(c)(1). Once the offender has exhausted all administrative remedies, he or she may then file a suit in federal court.

Here, the Plaintiff filed his Complaint on March 2, 2012. Those grievances that had completed the administrative process before that time are listed above in paragraphs 1-4 of the

---

[5]The complete regulation is available on the CDOC's website, www.doc.state.co.us.

Statement of Facts.  However, Defendant concedes that Plaintiff's grievance concerning "floating" and the administration of medication by corrections officers (described in paragraph 6 above), which completed the administrative process on March 8, 2012 (six days after the Complaint was filed), is exhausted; therefore, the Court will accept this grievance as exhausted.

With respect to the remaining grievances, those described in paragraphs 5 and 7 involve issues that are neither alleged nor raised as claims in the Plaintiff's Complaint, and the grievance officer concluded that the Plaintiff had not exhausted his administrate remedies as to either grievance.  Therefore, the Court will not consider them.

The January 25, 2012 grievance described in paragraph 8 concerning denied medical treatment for allergies to medications administered in December 2011 and January 2012 was not completed until April 16, 2012, well after the Complaint was filed.  A prisoner does not exhaust his administrative remedies when he fails to properly complete the grievance process or correct deficiencies in his grievances before filing a lawsuit.  *See Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).  "An inmate who begins the grievance process but does not complete it is barred from pursuing a Section 1983 claim under the PLRA for failure to exhaust his administrative remedies."  *Id.*  To the extent that the Plaintiff attempts to argue his case manager prevented him from exhausting this grievance, the Court notes that the grievance proceeded through the required steps in a timely manner.[6]  As such, this Court recommends finding that Plaintiff failed to exhaust

---

[6]*See* A.R. 850-04(H)(1)(b) ("The offender shall receive a written response to each Step 1 and Step 2 grievance within 30 calendar days of its receipt by the case manager/CPO. Step 3 grievances shall be answered within 45 days of receipt by the grievance officer.").  Here, the Step 1 grievance was received on January 27, 2012 and responded to on January 31, 2012; the Plaintiff fails to provide the correct Step 2 grievance, but Step 3 was received on March 9, 2012 and responded to on April 16, 2012.  *See* Grievances, docket #22 at 3-6.

his administrative remedies before filing the Complaint as to any claim(s) arising from the January 25, 2012 grievance.

Moreover, it appears that the Plaintiff alleges a claim for denied medical treatment after Plaintiff "declared emergencies" with hives and high blood pressure on February 17 and 18, 2012. There is no indication nor evidence that this issue was raised in the prison grievance process. Therefore, such claim has not been properly exhausted pursuant to § 1997e, and this Court recommends that the District Court grant Defendant's motion for summary judgment dismissing without prejudice this claim and any arising from the January 25, 2012 grievance. *See Jones*, 549 U.S. at 223-24.

At the same time, the Court recommends finding that Plaintiff has properly exhausted his administrative remedies pursuant to § 1997e(a) with respect to the following allegations: (1) denial of medications during the three instances when Plaintiff was taken to court; (2) denial of medications for his high blood pressure and high cholesterol in September and October 2011; (3) denial of Plaintiff's request for a low cholesterol diet; (4) denial of Plaintiff's request to be placed in a pod that does not use pepper spray; and (5) denial of proper medical treatment when his medications were "floated" and administered by corrections officers. *See id.*

The Court will proceed to analyze these exhausted allegations pursuant to Defendant's challenges under Fed. R. Civ. P. 12(b)(6).

## II.    Qualified Immunity

Defendant Boyd asserts that she is entitled to qualified immunity for the claims raised against her. Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow*

14

*v. Fitzgerald*, 457 U.S. 800, 818 (1982).  It is an entitlement not to stand trial or face the other burdens of litigation.  *Ahmad v. Furlong,* 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted).  The privilege is an immunity from suit rather than a mere defense to liability. *Id.*  When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity.  *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009).  "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity."  *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

The Supreme Court has discarded a review process that required courts to examine the elements of qualified immunity sequentially, first considering whether a right had been violated, and then second - if the court concluded a right had been violated - whether that right was clearly established at the time of the alleged violation.  *Pearson*, 555 U.S. at 232-44.  *Pearson* retired this process, instead affording courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id.* at 236; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

The Court will begin by analyzing whether Plaintiff properly asserts Defendant Boyd's personal participation in the alleged constitutional violations as required for claims brought pursuant to 42 U.S.C. § 1983.  Next, for each claim, the Court will determine whether Plaintiff plausibly states a violation of his constitutional rights, and if so, whether those rights were clearly established at the time of the violation.

    A.    <u>Personal Participation</u>

To recover under § 1983, a plaintiff must establish the violation of a right secured by the Constitution and laws of the United States. *Dodds v. Richardson*, 614 F.3d 1185, 1193 (10th Cir. 2010) (internal quotations omitted) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). Thus, there must be an affirmative link between actions taken by a defendant and any plan or policy put into effect that violates a plaintiff's constitutional rights. *Dodds*, 614 F.3d at 1200-01. "Personal involvement does not require direct participation because § 1983 states any official who causes a citizen to be deprived of her constitutional rights can also be held liable." *Id.* at 1195 (quoting *Buck v. Albuquerque*, 549 F.3d 1269, 1279 (10th Cir. 2008)) (internal quotations omitted).

While Plaintiff alleges that Defendant Boyd is his general care provider, several of Plaintiff's allegations do not assert Boyd's personal participation in the alleged conduct. For example, Plaintiff's allegations and grievance concerning denial of the ability to bring his medications with him to court three times mention nothing about Defendant Boyd, a nurse practitioner for the CDOC. (*See* Complaint, docket #2 at 6; Grievance, docket #2 at 20-23.) Moreover, Plaintiff's allegations and grievance concerning denial of proper medical treatment when his medications were "floated" and administered to him by corrections officers mention nothing about Defendant Boyd. (*See* Complaint, docket #2 at 7; Grievance, docket #33 at 10-13.) As the Plaintiff has failed to plausibly allege Defendant's personal participation in the conduct underlying Plaintiff's claims concerning denial of medications while taken to court and denial of proper medical treatment when his medications were "floated" and administered by corrections officers, this Court recommends that the District Court find Defendant is entitled to qualified immunity and grant Defendant's motion to

16

dismiss these claims.

With respect to the remaining claims, the Plaintiff plausibly alleges in both his grievances and the Complaint that Boyd personally participated in the denial of his medications in September and October 2011, in the denial of his request for a low cholesterol diet, and in the denial of his request to be removed from an area where pepper spray is used. (*See* Complaint, docket #2 at 6-8; Grievance, docket #2 at 12-15; Grievance, docket #2 at 16-19; Grievance, docket #21 at 2-5.) Therefore, the Court will proceed to determine whether these allegations plausibly state claims for violations of the Eighth, Fourteenth and Seventeenth Amendments.

B.    Eighth Amendment

Under the Eighth Amendment, prisoners are constitutionally entitled to "humane conditions of confinement guided by 'contemporary standards of decency.'" *Penrod v. Zavaras*, 94 F.3d 1399, 1405 (10th Cir. 1996) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Prisoners state a claim of cruel and unusual punishment under the Eighth Amendment by alleging prison officials demonstrated "deliberate indifference to a prisoner's serious illness or injury," or that prison officials "have, with deliberate indifference," involuntarily exposed a prisoner to conditions "that pose an unreasonable risk of serious damage to [the inmate's] future health." *Helling v. McKinney*, 509 U.S. 25, 35 (1993); *Estelle*, 429 U.S. at 105.

Plaintiff must meet both the objective and subjective components constituting the test for Eighth Amendment deliberate indifference. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). The objective component is met "if the harm suffered is 'sufficiently serious' to implicate the Cruel and Unusual Punishment Clause." *Id*. (quoting *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006), *overruled in part on other grounds as recognized in Robbins v. Oklahoma*, 519

F.3d 1242, 1246-47 (10th Cir. 2008)).  "A medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)).  The subjective component is met if the plaintiff demonstrates that a defendant "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan*, 471 F.3d at 1159 (quoting *Kikumura*, 461 F.3d at 1293).  The subjective component requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment." *Kikumura*, 461 F.3d at 1293 (quoting *Farmer v. Brennan*, 511 U.S. 825, 838 (1994)).

Beginning with the objective component, Plaintiff alleges that his high blood pressure has led to chest pains and swelling in his feet, and is a serious medical need.  (*See* docket #2 at 13.) Although high blood pressure may mandate treatment by a physician in the form of medication, suffering high blood pressure alone has been found <u>not</u> to constitute a sufficiently serious medical condition for purposes of the Eighth Amendment.  *See, e.g., Dickson v. Colman*, 569 F.2d 1310, 1311 (5th Cir. 1978) (finding that plaintiff's high blood pressure was not a 'serious threat' to his health).  However, when chest pains are a symptom of a more severe health problem, it has constituted a sufficiently serious medical condition under the Eighth Amendment.  *See, e.g., Gayton v. McCoy*, 593 F.3d 610, 620-21 (7th Cir. 2010) (finding that plaintiff who suffered chest pains stemming from Congestive Heart Failure ("CHF") constituted a serious medical condition).

With respect to Plaintiff's alleged high cholesterol, the failure to provide a plaintiff with a low cholesterol diet has been found not to violate the Eighth Amendment.  *See, e.g., Cody v. CBM*

*Corr. Food Servs.*, 250 F. App'x 763, 765 (8th Cir. 2007) (finding that prison's refusal of plaintiff's request for a special low cholesterol diet was not deliberate indifference in violation of the Eighth Amendment) ("[A] prisoner must show that the food he was served was nutritionally inadequate or prepared in a manner presenting an *immediate* danger to his health, or that his health suffered as a result of the food.") (emphasis added) (internal quotations omitted). *Id.* Likewise, with respect to Plaintiff's requested removal from pepper spray, the delay of a medical response to an intolerance to pepper spray has been found not to violate the Eighth Amendment's objective element. *See, e.g., Vaughn v. City of Lebanon*, 18 F. App'x 252, 274 (6th Cir. 2001) (finding that plaintiff failed to meet the objective element of his Eighth Amendment claim when he was not immediately treated for an allergic reaction to a pepper-spray-type substance) (internal quotations omitted).

In this case, Plaintiff alleges he experienced chest pains and swelling in his feet from his high blood pressure on multiple occasions in September and October 2011. (*See* docket #2 at 6.) Although he claims he had a heart attack in the past, the Plaintiff does not allege that this medical issue is a symptom of a current, more serious medical problem. Instead, Plaintiff simply states that he has "had high blood pressure since 1976." (*Id.* at 3.) To the extent that Plaintiff alleges any *delay* (as opposed to denial altogether) in receiving medications or treatment, the Plaintiff must assert that the delay caused him substantial harm. *Oxendine v. Kaplan*, 241 F.3d 1272, 1276-77 (10th Cir. 2001). "The substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). Here, Plaintiff merely asserts he has suffered chest pains and swelling in his feet, the latter for which Defendant instructed Plaintiff to elevate his feet above his heart. The Court finds that such allegations do not rise to the level of substantial harm.

Plaintiff also merely asserts that he suffers from high cholesterol without alleging his ingestion of prison food has caused any medical issues. (*Id.* at 7.) Further, Plaintiff alleges he has suffered vomiting, dizziness, difficulty breathing and heart flutters immediately following two pepper sprays, but he alleges nothing about whether the pepper spray has resulted in a current, more serious health problem or has exacerbated his high blood pressure. (*Id.*)

Because the Plaintiff has alleged only that he experiences these medical issues without the existence of more serious health problems, the Court finds that Plaintiff has failed to establish a sufficiently serious medical need to meet the objective requirement for any claims brought pursuant to the Eighth Amendment. However, even if the Plaintiff had met the objective component of the Eighth Amendment, the Plaintiff has failed to meet the subjective element of any Eighth Amendment claims.

To meet the subjective component, Plaintiff must allege that Defendant Boyd acted with deliberate indifference. As the Tenth Circuit established in *Johnson v. Stephan*, 6 F.3d 691, 692 (10th Cir. 1993), a difference of opinion between a prisoner and prison medical staff regarding the treatment or diagnosis of a medical condition does not constitute deliberate indifference. In the context of § 1983 suits under the Eighth Amendment, a defendant is not required to show that he made a correct or even prudent decision in diagnosing or treating a plaintiff's medical condition. *Braxton v. Wyandotte Cnty. Sheriff's Dep't*, 206 F. App'x 791, 793 (10th Cir. 2006) ("inadvertent failure to provide adequate medical care or negligence in diagnosing or treating a medical condition does not violate the Eighth Amendment."). "So long as a medical professional provides a level of care consistent with the symptoms presented by the inmate, absent evidence of actual knowledge or recklessness, the requisite state of mind cannot be met." *Self v. Crum*, 439 F.3d 1227, 1233 (10th

Cir. 2006).

In *Self*, the Tenth Circuit held that the "subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his medical judgment." *Id.* at 1232. "[D]ecisions as to whether to consult a specialist or undertake additional medical testing" have traditionally fallen into this category. *Id.* Unless the need for additional medical treatment or a referral is obvious, a defendant's missed diagnosis or delayed referral is not actionable. *Id.* "Obviousness" may arise in cases where: (1) a medical professional is aware of his inability to provide adequate treatment, but delays or refuses to provide a referral; (2) a medical professional fails to treat a medical condition so obvious that even a layman would recognize it; or (3) a medical professional completely denies care despite recognizable symptoms which potentially create a medical emergency. *Id.*

In this case, Plaintiff asserts that Defendant Boyd was deliberately indifferent in refusing to provide him with or delaying medication for his high blood pressure. (Docket #2 at 6.) While Plaintiff seems to allege that he was given no medication to treat his high blood pressure, he admits that he was seen by prison medical staff on numerous occasions and given aspirin, Zantac, and HCTZ pills to treat his high blood pressure. (*Id.*)

Plaintiff also asserts that after submitting a kite on September 25, 2011, he visited Defendant Boyd on October 7, 2011 and complained about several recent readings showing high blood pressure and the fact that his feet were swollen. He claims he was "sent back to [his] cell without receiving medical treatment." (*Id.* at 7.) According to the Plaintiff, Boyd told him "I don't want to put you on more medication - you take too much already." (*Id.*) At the same time, Plaintiff concedes that Boyd instructed him to elevate his feet above his heart to reduce the swelling in his feet. (*Id.*)

Plaintiff does not allege that Defendant refused to prescribe him *any* medication for his high blood pressure; just that Defendant determined not to prescribe *additional* medication.  Thus, Plaintiff's allegations do not demonstrate Boyd's deliberate indifference to any serious medical need but merely Plaintiff's disagreement with Boyd's decision not to prescribe additional medication and with her treatment for his swollen feet.  *See Johnson*, 6 F.3d at 692.

In addition, Plaintiff alleges that Defendant Boyd was deliberately indifferent in denying his request for a low cholesterol diet.  (Docket #2 at 7.)  Plaintiff contends that other "specialists" recommended he follow such diet.  (*Id.*)  The grievance attached to Plaintiff's Complaint regarding this alleged refusal reflects that Defendant Boyd explained, "[t]he CDOC regular menu is a low fat diet" which "is suitable for your medical condition." (*Id.* at 17; *see also id.* at 18, 19.)  The Plaintiff does not allege that Boyd knew or should have known the prison diet was causing Plaintiff any serious harm and disregarded such harm.  *Mata*, 427 F.3d at 752 (the plaintiff must allege that an official acted or failed to act despite the official's knowledge of a substantial risk of serious harm).  Again, Plaintiff's allegations simply reflect a disagreement of Boyd's diagnosis or treatment, not that she was deliberately indifferent to a serious medical need.

Finally, Plaintiff alleges that Defendant Boyd was deliberately indifferent in denying his request to be removed from any area where pepper spray is used.  (Docket #2 at 7.)  He claims he made the request because he is "a cardiac patient who has had a heart attack, stents in my heart, high blood pressure, and high cholesterol." (*Id.*)  Once again, Plaintiff does not allege that Boyd knew or should have known the pepper spray caused the Plaintiff serious harm to his health and disregarded such harm.

Plaintiff has failed to meet both the objective and subjective components for any claims he

has brought pursuant to the Eighth Amendment.  Therefore, the Court recommends the District Court find Defendant Boyd is entitled to qualified immunity with respect to Plaintiff's alleged Eighth Amendment claims, and grant Defendant's motion to dismiss all Eighth Amendment claims accordingly.

C.     Fourteenth Amendment

Plaintiff also alleges that Defendant Boyd violated the Fourteenth Amendment.  While Plaintiff's allegations in this respect are vague in that he fails to mention violations of either due process or equal protection in his Complaint, construing the pleading liberally, it is possible the Plaintiff alleges violations of both the Due Process and Equal Protection Clauses of the Fourteenth Amendment.  Therefore, the Court will address both claims beginning with the alleged due process claim.

1.     *Due Process Claim*

Construing his claim liberally, Plaintiff appears to allege that Defendant Boyd's failure to provide him with adequate medical care, including a low cholesterol diet and protection from pepper spray, deprived him of his right to life without due process of law.  (*Id.* at 8.)

The Constitution guarantees due process when a person is to be deprived of life, liberty or property.  *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994).  Whether a constitutionally protected interest exists depends upon the nature of the interest asserted.  *See Sandin v. Conner*, 515 U.S. 472, 480 (1995). A prisoner is not entitled to any procedural protections in the absence of a grievous loss.  *See Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

As set forth above, Plaintiff's allegations do not demonstrate that he was deprived of life or any loss of life, or otherwise suffered a grievous loss in any way.  Because Plaintiff fails to allege

the existence of a constitutionally protected interest, his due process claim fails.

To the extent Plaintiff's claim may be construed as a violation of a "liberty" interest, the Court comes to the same conclusion. To state a valid due process claim, Plaintiff must allege two elements: (1) that a recognized liberty or property interest has been interfered with by the defendants; and (2) that the procedures attendant to that deprivation were not constitutionally sufficient. *McMillan v. Wiley*, 813 F.Supp.2d 1238, 1247 (D. Colo. Sept. 14, 2011). Prisoners retain only a narrow range of protected liberty interests. *Id.* (quoting *Abbott v. McCotter*, 13 F.3d 1439, 1442 (10th Cir. 1994)) (internal quotations omitted). An inmate contending that the conditions of confinement give rise to a constitutionally-protected liberty interest must show that the conditions constitute an atypical and significant hardship when compared to the ordinary incidents of prison life. *Id.* at 1248 (internal quotations omitted).

The Tenth Circuit has applied several factors in analyzing whether conditions impose such an atypical and significant hardship that a liberty interest exists. *Id.* These factors include whether: (1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement; and (4) the placement is indeterminate. *Id.* (quoting *Estate of DiMarco v. Wyo. Dept. of Corr.*, 473 F.3d 1334, 1342 (10th Cir. 2007)).

Here, Plaintiff fails to allege how the conditions of his confinement constitute an "atypical and significant hardship" when compared to normal prison life. As set forth in the Court's analysis of the potential Eighth Amendment claims, the Plaintiff fails to allege any significant or atypical harm or hardship as a result of Defendant Boyd's alleged conduct. Moreover, he fails to allege how Boyd's conduct may, in fact, affect his liberty in any way.

24

Thus, the Court recommends the District Court find that Defendant Boyd is entitled to qualified immunity on Plaintiff's due process claim and dismiss the claim accordingly.

2.     *Equal Protection*

Again, although not stated in his Complaint, the August 31, 2011 grievance attached to his Complaint mentions a violation of equal protection when he was denied the ability to take medication with him to court three times.  (Docket #2 at 21.)  As set forth above, the Court has concluded that Plaintiff fails to allege Defendant's personal participation in this claim; however, in an effort to be thorough, the Court will analyze this potential claim to determine whether Plaintiff states a viable equal protection claim.

The Fourteenth Amendment provides that "[n]o State shall make or enforce any law which shall ... deny any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  The Tenth Circuit has stated that "an equal protection violation occurs when the government treats someone differently than another who is similarly situated."  *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).   "Unless a classification warrants some form of heightened review because it jeopardizes the exercise of a fundamental right or categorizes an individual on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest."  *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).

Although Plaintiff mentions he suffered "discrimination" as a "Black inmate," he has not alleged facts to suggest that he was treated differently from similarly situated non-Blacks.  (*See* docket #2 at 20-23.)  Likewise, although the Supreme Court has recognized a "class of one" equal protection claim "where the plaintiff alleges [  ]he has been intentionally treated differently from

others similarly situated and that there is no rational basis for the difference in treatment," *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000) (per curiam) (citations omitted), the Plaintiff has not alleged that Defendant intentionally treated him differently from others similarly situated and there is no rational basis for such difference.

Because Plaintiff has failed to state a "class of one" Equal Protection claim under the Fourteenth Amendment, the Court recommends that the District Court find Defendant Boyd is entitled to qualified immunity, and dismiss Plaintiff's equal protection claim (to the extent it may be construed) against Defendant.

D.     Seventeenth Amendment

Plaintiff simply lists a Seventeenth Amendment violation without any additional facts or assertions to support his claim.  (*See* docket #2 at 6.)  Plaintiff's allegation is a "bare assertion" or is "merely conclusory" and, thus, is insufficient to state a plausible claim.  *See Iqbal*, 556 U.S. at 677-81.  Because the Seventeenth Amendment applies only to Senatorial Elections and there are no allegations in the Complaint concerning any such elections, it would appear that Plaintiff improperly asserted this claim against Defendant Boyd.  As such, the Plaintiff has failed to assert factual allegations that rise to "a right to relief above the speculative level."  *Christy Sports*, 555 F.3d at 1191.  Therefore, the Court recommends that the District Court find Defendant Boyd is entitled to qualified immunity and grant Defendant's motion to dismiss the Plaintiff's Seventeenth Amendment claim.

## CONCLUSION

The Court finds that, because Plaintiff failed to exhaust his administrative remedies, summary judgment is proper as to Plaintiff's claims arising from the January 25, 2012 grievance and

concerning any alleged denial of medical care on February 17 or 18, 2012, and recommends that the District Court dismiss such claims without prejudice.  Further, the Court concludes that Plaintiff fails to state plausible constitutional violations and, thus, Defendant is entitled to qualified immunity with respect to Plaintiff's Eighth, Fourteenth and Seventeenth Amendment claims.  Accordingly, the Court respectfully RECOMMENDS that Defendant's Motion to Dismiss [filed May 10, 2012; docket #27] be **GRANTED**.

Dated and entered at Denver, Colorado, this 15th day of August, 2012.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge

27